UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 08-77-GWU


LENA SALYERS,                                                                    PLAINTIFF,


VS.                              **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.


**INTRODUCTION**

        The plaintiff brought this action to obtain judicial review of an administrative

denial of her application for Disability Insurance Benefits (DIB).  The appeal is

currently before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

        The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

> 1.      Is the claimant currently engaged in substantial gainful activity?
>         If yes, the claimant is not disabled.  If no, proceed to Step 2.
>         See 20 C.F.R. 404.1520(b), 416.920(b).
>
> 2.      Does the claimant have any medically determinable physical
>         or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
>         claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.
>
> 3.      Does the claimant have any severe impairment(s)--i.e., any
>         impairment(s) significantly limiting the claimant's physical or
>         mental ability to do basic work activities?  If yes, proceed to
>         Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
>         404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?   If yes, the claimant was not disabled.   If no, proceed to Step 7.   See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the

3

08-77  Lena Salyers

alleged pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment.  The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence
before it, despite the plaintiff's claims that he was unable to afford extensive medical
work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592
(6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a
factor to be considered against the plaintiff, Hale v. Secretary of Health and Human
Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way
to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d
241, 242 (6th Cir. 1990).

4

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).   However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Lena Salyers, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a history of benign paroxysmal positional vertigo, osteoarthritis, anxiety with agoraphobia, degenerative joint disease of the left shoulder status post shoulder manipulation for frozen shoulder, and a cognitive disorder by history.  (Tr. 18).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Salyers retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 20-3).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 58, high school education, and work experience as a project manager, accountant, and sales assistant could perform any jobs if she were capable of "medium" level exertion, and also had the following non-exertional limitations.  (Tr. 280).  She: (1) could not balance or climb ladders, ropes, or scaffolds; (2) could not push or pull or perform overhead work with her left, non-dominant arm and hand; (3) required entry level work with simple, repetitive procedures, no frequent changes in work routines, no requirement for complex or detailed problem solving, independent planning, or more than occasional interaction

with the general public, coworkers, or supervisors; and (4) should preferably work in a solitary work environment dealing with objects as opposed to people. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 281-2).

On appeal, this court must determine whether the hypothetical factors given to the VE are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Salyers alleged disability beginning March 25, 2004 due to benign paroxysmal positional vertigo (BPPV), arthritis, and "nerves." (Tr. 103-4). She testified, however, that she had worked part-time through December, 2004. (Tr. 253). She felt that she could not handle her job because of memory problems and anxiety, and because she was not able to deal with the public. (Tr. 256-7). Although she had sought treatment at a Comprehensive Care Center (CCC), she was not currently going because her family income was too high to qualify, and she was seeing only her regular family physician, Dr. Abordo, and a gynecologist, Dr. Eunice Johnson, with whom she discussed her problems. (Tr. 260-1). She was on a medication for anxiety and depression which had helped somewhat. (Tr. 262). She was able to get out of her house to go to church twice a week and to do grocery shopping. (Tr. 262-3). She would sometimes have attacks when she was around people, however. (Tr. 263). She had difficulty remembering what she was doing

and was also having difficulty with spelling.  (Tr. 265-6).  Physically, her main problem appeared to be BPPV, for which she had been treated at Cardinal Hill Rehabilitation Center in 2004 and 2005.  (Tr. 258).  The vertigo had not resolved, but the treatment had improved her tolerance.  (Tr. 259).  She had difficulty doing anything where she was required to look up, and had to be cautious moving her head from side to side.  (Tr. 270-1).  She also had an issue with a frozen left shoulder beginning in January, 2006, for which a physician had done a manipulation under general anesthesia.  (Tr. 274).  The condition had improved, although she still had some trouble reaching up.  (Tr. 275).

The medical evidence shows that Mrs. Salyers complained of some transient illnesses to her family physician, Dr. Melecio Abordo, but was referred to a neurologist for dizziness and fainting spells in early 2004.  (Tr. 169-78).  The neurologist, Dr. Maria Pavez, examined the plaintiff on April 29, 2004, and noted objective findings consistent with BPPV.  (Tr. 194).  A discharge summary from Cardinal Hill dated May 20, 2004, states that after three treatment sessions there had been a complete resolution of vertigo with positional movements, and the plaintiff "does not report difficulty with any functional mobility at this time." (Tr. 189).  No follow-up was necessary, although she was instructed in home exercises.  (Id.).  An office note from Dr. Pavez dated June 1, 2004 also states that the dizziness had resolved, that the plaintiff was doing well, and she would only be seen as needed.  (Tr. 183).  No functional restrictions are suggested.

08-77  Lena Salyers

Office notes from an orthopedist, Dr. Mukut Sharma, indicate that the plaintiff was treated in April, 2006 for a frozen left shoulder, by being placed under anesthesia and manipulating the left shoulder until the scar tissue gave way.  (Tr. 244).  The physician prescribed physical therapy and pain medication, but did not list any functional restrictions.

Dr. Abordo provided a short statement in August, 2006 that Mrs. Salyers was suffering from anxiety, panic attacks, depression, hyperlipidemia, vertigo, and significant agoraphobia.  (Tr. 239).  No functional restrictions are suggested.

A state agency physician, Dr. R. K. Brown, reviewed the evidence in May, 2005 and concluded that the plaintiff did not have a "severe" physical impairment. (Tr. 217).

Psychologically, the plaintiff was given a consultative examination by I. T. Baldwin on April 11, 2005.  (Tr. 196).  The plaintiff stated that she could not work because she was unable to deal with stress and with the public, and it appeared she had a number of stressors in her life, including an adult daughter who needed a great deal of extra care because of physical handicaps as well as recent deaths in her family.  (Tr. 197).  Her problem with dizziness made her anxiety worse, and it was still giving her difficulty despite therapy at Cardinal Hill and at home.  (Tr. 197-8).  She described poor memory and concentration, and felt she was not competent to handle the family finances.  (Tr. 199).  Mr. Baldwin conducted IQ testing, which showed a full scale IQ score of 91 and detected no problems with memory or

concentration.  (Tr. 199-200).  He saw no signs of excessive depression or anxiety. (Tr. 200).  His impression was "mild" anxiety, and he placed no major limits on the plaintiff's activities as a result of intellectual or psychological impairments.  (Tr. 200-1).

State agency physicians who reviewed the record at this point concluded that Mrs. Salyers did not have a "severe" mental impairment.  (Tr. 203, 218).

Subsequently, notes from an apparent psychiatric source at the CCC were submitted, indicating that Mrs. Salyers was seen on August 27, 2005 complaining of a problem with anxiety for three years, along with poor sleep, irritability, and poor concentration.  (Tr. 232).  However, on examination, the source noted that her memory and concentration seemed to be intact, and she had good abstraction ability. (Tr. 234).  The source diagnosed an anxiety disorder along with several "rule out" conditions (Tr. 235); however, a Global Assessment of Functioning (GAF) score of 70 was assigned, reflecting no more than mild symptoms.  Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.

Additionally, Dr. Eunice Johnson submitted a letter stating that the plaintiff had been a patient for more than ten years, during which time she had noticed a marked decrease in her short-term memory in answering questions, and in her opinion, the plaintiff's memory loss would prevent her from being able to perform any job, "much less the bookkeeping that was her profession."  (Tr. 238).

Under the circumstances, with a treating neurologist stating that the plaintiff's symptoms of vertigo had resolved after treatment in 2004 and no permanent restrictions being placed on the plaintiff for her shoulder problem, the ALJ's choice of physical restrictions gave the plaintiff the benefit of the doubt.  Psychologically, neither the evaluation by Mr. Baldwin or the psychiatrist at CCC confirms the presence of limitations related to anxiety or memory.  The ALJ discounted Dr. Johnson's statement on the reasonable grounds that there were no treatment notes from this source, because her opinion was inconsistent with other evidence, and also asserted that Dr. Johnson was giving an opinion that was not within her specialty.  (Tr. 21-2)  Whatever else may be said about the ALJ's reasoning, the court agrees that without more evidence of a treatment relationship, Dr. Johnson's opinion is not entitled to controlling weight, and is outweighed by the evidence from the examiners and the opinions of the state agency reviewers.

The plaintiff submitted additional evidence to the Appeals Council which includes a letter from a physical therapist at Cardinal Hill stating that Mrs. Salyers had been treated a second time in June, 2005 for further complaints of dizziness. (Tr. 245).  The therapist reported that she was improved after treatment and discharged in October, 2005, but she continued to report occasional complaints of dizziness.  (Id.).  There was also an additional letter from Dr. Abordo reporting that Mrs. Salyers had extreme vertigo which inhibited her daily activities, as well as severe anxiety and significant agoraphobia, making her unable to function in large

crowds.  (Tr. 246).   The plaintiff notes that the ALJ discussed only her 2004 treatment at Cardinal Hill, and requests a remand for the consideration of the new evidence.

The applicable case law provides that evidence submitted to the Appeals Council cannot be considered in determining whether the ALJ's decision was supported by substantial evidence, but can be the basis for a remand for further administrative proceedings if the plaintiff shows that the evidence was new and material and that there was good cause for failing to present it to the ALJ.  Cline v. Commissioner of Social Security, 96 F.3d 146, 148-9 (6th Cir. 1996).  The new evidence partially meets the test for materiality, since it pertains to the plaintiff's condition prior to the date of the ALJ's decision, but the Sixth Circuit has noted that materiality also refers to the likelihood that the evidence would change the outcome of the prior proceeding.  Id.  It is questionable whether this would have been the case, since neither the physical therapist nor Dr. Abordo provided any specific functional limitations due to vertigo and the ALJ had already provided a limitation on balancing and climbing in the hypothetical question.  Assuming, however, that the new evidence was "material," the plaintiff has completely failed to satisfy the "good cause" requirement.  No reason has been given for failing to provide updated records from Cardinal Hill concerning treatment which had been concluded over a year before the November 9, 2006 administrative decision.  Dr. Abordo's statement that the plaintiff was unable to function in large crowds due to her anxiety would also

08-77  Lena Salyers

appear to fail the materiality test, since the hypothetical question limited the plaintiff from more than occasional interaction with others.  (Tr. 20).  Therefore, it would not have changed the ALJ's decision even if it had been available.

A separate order and judgment will be entered granting the defendant's motion for summary judgment and denying the plaintiff's motion for summary judgment or in the alternative remanding the case for further consideration.

This the 10th day of December, 2008.


**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**